# No. 20-2256

## UNITED STATES COURT OF APPEALS
### FOR THE
### SIXTH CIRCUIT

RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, INDIVIDUALLY AND AS NEXT FRIEND ON BEHALF OF MINOR CHILDREN C.M., Z.M., AND N.M; AND STEPHANIE SMITH, INDIVIDUALLY AND AS NEXT FRIEND ON BEHALF OF HER MINOR CHILD F.S.,

*Plaintiffs-Appellants,*

**v.**

ELIZABETH HERTEL, IN HER OFFICIAL CAPACITY AS THE DIRECTOR OF THE MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES; DANA NESSEL, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MICHIGAN; LINDA S. VAIL, IN HER OFFICIAL CAPACITY AS THE HEALTH OFFICER OF INGHAM COUNTY; AND CAROL A. SIEMON, IN HER OFFICIAL CAPACITY AS THE INGHAM COUNTY PROSECUTING ATTORNEY,

*Defendants-Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
HONORABLE PAUL L. MALONEY
Civil Case No. 1:20-cv-1016

## PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC

ERIN ELIZABETH MERSINO
GREAT LAKES JUSTICE CENTER
5900 W. MOUNT HOPE HWY.
LANSING, MI 48917
(517) 322-3207
ERIN@GREATLAKESJC.ORG

*Counsel for Plaintiffs-Appellants*
*Resurrection School; Christopher*
*Mianecke, C.M., Z.M., and N.M.;*
*Stephanie Smith and F.S.*

ROBERT J. MUISE
AMERICAN FREEDOM LAW CENTER
P.O. BOX 131098
ANN ARBOR, MI 48113
(734) 635-3756
RMUISE@AMERICANFREEDOMLAWCENTER.ORG

*Counsel for Plaintiffs-Appellants*
*Resurrection School; Stephanie Smith, and F.S.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT IN SUPPORT OF REHEARING EN BANC ................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................. 3

REASONS FOR GRANTING REHEARING EN BANC ...................................... 8

    I.    The Panel's Decision Creates an Intra-Circuit Conflict Between
          *Beshear* and *Monclova Christian Academy* .................................................. 8

    II.   The Panel's Decision Conflicts with *Tandon v. Newsom* ........................... 12

    III.  The Panel's Decision Conflicts with *Fulton v. City of Philadelphia* ......... 13

CONCLUSION .................................................................................................... 15

CERTIFICATE OF COMPLIANCE .................................................................... 16

CERTIFICATE OF SERVICE .............................................................................. 17

PANEL OPINION .......................................................................................... *attached*

# TABLE OF AUTHORITIES

**Cases** **Page**

*Agostini v. Felton,*
521 U.S. 203 (1997) ............................................................11

*Bible Believers v. Wayne Cnty.,*
805 F.3d 228 (2015) ........................................................7, 8

*Brach v. Newsom,*
No. 20-56291, 2021 WL 3124310 (9th Cir. July 23, 2021) ....................................8

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ............................................................9

*Commonwealth v. Beshear,*
981 F.3d 505 (6th Cir. 2020)............................................*passim*

*Danville Christian Acad., Inc. v. Beshear,*
141 S. Ct. 527 (2020) ............................................................10

*Fulton v. City of Phila.,*
141 S. Ct. 1868 (2021) ............................................................*passim*

*Monclova Christian Acad. v. Toledo-Lucas Cty. Health Dep't,*
984 F.3d 477 (6th Cir. 2020)............................................*passim*

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
141 S. Ct. 63 (2020) ............................................................9, 10

*Tandon v. Newsom,*
141 S. Ct. 1294 (2021) ............................................................*passim*

## Statutes and Rules

6 Cir. I.O.P. 35 ............................................................................................... 1, 3

Fed. R. App. P. 35 ......................................................................................... 1, 3

MCL 333.2253(1) ............................................................................................. 3

**STATEMENT IN SUPPORT OF REHEARING EN BANC**

Plaintiffs petition for rehearing en banc of the August 23, 2021, 2-1 panel decision in *Resurrection School v. Hertel* for three reasons. First, the decision squarely creates internal conflict within the Sixth Circuit between *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020) and *Monclova Christian Academy v. Toledo-Lucas County Health Department*, 984 F.3d 477 (6th Cir. 2020). Fed. R. App. P. 35(b)(1)(A); 6 Cir. I.O.P. 35(a). *Monclova Christian Academy* correctly limited *Beshear* to its facts and aligned this Circuit's precedent with that of the Supreme Court. The panel majority ("Panel") here improperly framed *Monclova Christian Academy* as mischaracterizing *Beshear* so that the majority could call *Beshear* the "controlling" law in this Circuit and relegate *Monclova Christian Academy* to the dust bin. This intra-Circuit conflict is a paradigm for en banc review.

Second, the panel decision is contrary to the Supreme Court's holding in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).[1] Fed. R. App. P. 35(b)(1)(A). And third, the decision misapplies *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021). The Panel repeats an error the Supreme Court has spent over three decades denouncing: the practice of burdening religious exercise with heavy-handed restrictions "that do not satisfy the threshold requirement of being neutral and

---

[1] Circuit Judge Siler dissented in part, stating that he "would remand to the district court to review the case in light of the decision in *Tandon*." Op. at 31.

generally applicable." *Id*. at 1871. By committing this error, the Panel has forwarded one "general applicability" standard for the Sixth Circuit, while the rest of the country follows that "[a] law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by creating a mechanism for individualized exemptions." *Id*. And that "[a] law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*. at 1877.

The orders that Plaintiffs challenge in this case, issued at the sole discretion of Defendant Elizabeth Hertel, "consider the particular reasons for a person's conduct," qualifying some reasons as deserving of exemption, but not others. *Id*. And the orders prohibit religious conduct while permitting secular conduct that undermines the government's interests in a similar way. If, for example, the person's conduct involved public speaking, public law enforcement, dining with friends at a public restaurant, or other myriad reasons, the activity was exempt. However, if the person's conduct involved religious education at a small, private religious school, decidedly not open to the public, an exemption did not apply. This petition asks: in light of *Monclova Christian Academy*, *Tandon*, and *Fulton*, did the panel err by holding that the challenged orders, which contain secular exemptions, are neutral and generally applicable? The question warrants swift en banc review because the

two-judge majority committed precedent-setting errors of exceptional importance. Fed. R. App. P. 35(b)(1)(B); 6 Cir. I.O.P. 35(a).

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2020, Defendant Elizabeth Hertel, the Director of the Michigan Department of Health and Human Services ("MDHHS"), ordered for children age five and older to wear face coverings in school. Op. at 5. Similar orders were re-issued throughout the entirety of the 2020-21 schoolyear and are collectively referred to in the panel's decision as "orders" or "MDHHS Orders."[2] Op. at 6, n. 2. The order primarily referenced by the panel decision provides:

**Face mask requirement at gatherings.**
(a) All persons participating in gatherings are required to wear a face mask.

(b) As a condition of gathering for the purpose of transportation, transportation providers must require all staff and patrons to use face masks, and must enforce physical distancing among all patrons to the extent feasible.

(c) Except as provided elsewhere in this order, a person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, must prohibit gatherings of any kind unless the person requires individuals in such gatherings (including employees) to wear a face mask, and denies entry or service to all persons refusing to wear face masks while gathered.

---

[2] Director Hertel issues her orders under MCL 333.2253(1), which states: "[i]f the director determines that control of an epidemic is necessary to protect the public health, the director by emergency order may prohibit the gathering of people for any purpose and may establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws. Emergency procedures shall not be limited to this code."

(d) A person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, may not assume that someone who enters the facility without a face mask falls within one of the exceptions specified in section 8 of this order, including the exception for individuals who cannot medically tolerate a face mask. An individual's verbal representation that they are not wearing a face mask because they fall within a specified exception, however, may be accepted.

\* \* \*

**Exceptions to face mask requirements.**
Although a face mask is strongly encouraged even for individuals not required to wear one (except for children under the age of 2), the requirement to wear a face mask in gatherings as required by this order does not apply to individuals who:

(a) Are younger than 5 years old, outside of a child care organization or camp setting (which are subject to requirements set out in section 7(e));

(b) Cannot medically tolerate a face mask;

(c) Are eating or drinking while seated at a food service establishment or at a private residence;

(d) Are exercising outdoors and able to consistently maintain 6 feet of distance from others;

(e) Are swimming;

(f) Are receiving a medical or personal care service for which removal of the face mask is necessary;[3]

(g) Are asked to temporarily remove a face mask for identification purposes;

---

[3] Personal care services include hair, nail, tanning, massage, traditional spa, tattoo, body art, piercing services, or similar personal care services. *See* https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-551407,00. html, last visited September 6, 2021.

(h) Are communicating with someone who is deaf, deafblind, or hard of hearing and whose ability to see the mouth is essential to communication;

(i) Are actively engaged in a public safety role, including but not limited to law enforcement, firefighters, or emergency medical personnel, and where wearing a face mask would seriously interfere in the performance of their public safety responsibilities;

(j) Are engaging in a religious service;

(k) Are giving a speech for broadcast or to an audience, provided that the audience is at least 12 feet away from the speaker; or

(l) Are participating in a testing program specified in MDHHS's document entitled Guidance for Athletics issued February 7, 2021, and are engaged

Op. at 6-7. Defendants rely on the schools to implement and enforce their orders. A violation of MDHHS's orders is a misdemeanor offense, punishable by imprisonment of up to six months in jail and subject to a two-hundred dollar criminal fine or one-thousand dollar a day civil fine.[4]

Plaintiff Resurrection School is a small, private, Catholic school in Lansing, Michigan. (R-8-1: Decl. of Jacob Allstott, Page ID #172). Plaintiffs Mianecki and Smith specifically selected Catholic schools for their children F.S., C.M., Z.M., and N.M., to raise their children in their faith. (R-8-2: Decl. of Christopher Mianecke, Page ID #183, 188.; R-8-3: Decl. of Stephanie Smith, Page ID #193-94).

---

[4] https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455551407,00. html, last visited Sept. 6, 2021.

Plaintiff Resurrection School established strict safety protocols and methods to return to in-person schooling.  (R-8-1: Decl. of Jacob Allstott, Page ID #174).  It required that students wear masks in common areas of the school, such as hallways, and implemented a map and traffic system to establish social distancing for parent drop off and pick up.  (R-8-1: Decl. of Jacob Allstott, Page ID #174).  Students were required to complete strict health screening before entering the school.  (R-8-1: Decl. of Jacob Allstott, Page ID #176).  Classes were divided into "cohorts" and did not interact with other classes.  (R-8-1: Decl. of Jacob Allstott, Page ID #176).  Cohorts were further broken down into "pods" of just four students.  (R-8-1: Decl. of Jacob Allstott, Page ID #176).  Pods ate lunch together and attended Mass together, while practicing social distancing.  (R-8-1: Decl. of Jacob Allstott, Page ID #176).

Resurrection School required social distancing throughout the school and enforced handwashing, the use of hand sanitizer, and strict sanitization and disinfection of its facilities several times a day with a commercial grade antimicrobial fogger in accordance with EPA and CDC guidelines. (R-8-1: Decl. of Jacob Allstott, Page ID #176).  UV-C air purification systems were installed in each classroom to kill airborne containments, including COVID-19, and continuously run during school

No outside visitors were allowed in the school.  (R-8-1: Decl. of Jacob Allstott, Page ID #176).  Families were to avoid all busing to avoid any contact

between different cohorts or anyone outside the school. (R-8-1: Decl. of Jacob Allstott, Page ID #177). Resurrection School followed these strict protocols and avoided any COVID-19 outbreaks at the school. (R-8-1: Decl. of Jacob Allstott, Page ID #177). Through these effective mitigation efforts, Resurrection School carefully preserved the most important aspect of its school: the religious and virtue-based education the students receive in the classroom. These efforts allowed children to safely learn and engage in religious education while seated at their desks without the disruption and negative effects of forcing children in grades kindergarten through fifth grade to wear masks at all times. (R-8-1: Decl. of Jacob Allstott, Page ID #177).

Plaintiffs moved for a temporary restraining order and preliminary injunction in the district court. Op. at 11. Without conducting a fact-finding hearing, the district court denied the motions on the filings, concluding that pursuant to *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020), MDHHS's orders were generally applicable and passed rational basis review. Op. at 12.

On appeal, the Panel unanimously, and correctly, held that the case is not moot. Op. at 13-20. On the merits, however, two judges upheld the district's court denial of injunctive relief for Plaintiffs' free exercise claim.[5] Op. at 21-28. While

---

[5] The panel majority held that Plaintiffs' equal protection and substantive due process claims were "meritless." Op. at 29-30. *But see, e.g.*, *Bible Believers v.*

the panel majority did not doubt Plaintiffs' sincerely held religious beliefs, it found that the district court's application of *Beshear* was correct. Op. at 21-28.[6] Judge Siler dissented, stating that in light of recent case law, the case should be remanded. Op. at 31 (Siler, J., dissenting). This petition follows.

## REASONS FOR GRANTING REHEARING EN BANC

I.     **The Panel's Decision Creates an Intra-Circuit Conflict between *Beshear* and *Monclova Christian Academy*.**

The Panel begins its analysis by admitting that *Beshear* and *Monclova Christian Academy* "seemingly conflict with one another." Op. at 23.

In *Monclova Christian Academy*, this Court analyzed whether forcing a religious school to conduct its operations virtually implicated religious exercise. *Monclova Christian Acad. v. Toledo-Lucas Cty. Health Dep't*, 984 F.3d 477, 479–80 (6th Cir. 2020), *reh'g den.* (Jan. 6, 2021). The plaintiffs argued that the condition of being virtual violated their free exercise of religion. *Id.* The school asserted that "a communal in-person environment" was critical to the religious education it provided. *Id.* This Court properly found "no basis to second-guess" the school. *Id.*

---

Wayne Cnty.*, 805 F.3d 228, 256 (6th Cir. 2015); *Brach v. Newsom*, No. 20-56291, 2021 WL 3124310 at *16-18 (9th Cir. July 23, 2021).

[6] Without a factual record to support its naked assertion, the panel majority stated that MDHHS's orders were "largely limited to activities of lesser risk than in-person instruction." Op. at 25.

*Monclova Christian Academy* also explained the proper standard under which to analyze free exercise claims when the government restricts religious conduct but exempts secular conduct, correctly analyzing the general applicability threshold. *Id.* at 480 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)). This Court explained:

> Whether conduct is analogous (or "comparable") for purposes of this rule does not depend on whether the religious and secular conduct involve similar forms of activity. Instead, *comparability is measured against the interests the State offers in support of its restrictions on conduct. Specifically, comparability depends on whether the secular conduct "endangers these interests in a similar or greater degree than" the religious conduct does. Lukumi*, 508 U.S. at 543.

*Monclova Christian Acad.*, 984 F.3d at 480 (emphasis added). Remarkably, in the instant case, the Panel held that *Monclova Christian Academy* is not controlling legal precedent in this Circuit. The Panel found that *Monclova Christian Academy* is nothing more than a later decided case distinguishing earlier case law and therefore non-precedential. The Panel erred.

On November 25, 2020, the Supreme Court decided *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In *Cuomo*, the Supreme Court importantly demonstrated how COVID-19 restrictions should be analyzed in religious liberty cases.

> In *Cuomo*, for example, the Court said that activities at "acupuncture facilities, camp grounds, garages," and retail stores were comparable to "attendance at houses of worship"—precisely because that secular conduct presented a "more serious health risk" than the religious

conduct did. 141 S. Ct. at 66-67. Mitigation of that risk, of course, was the State's asserted interest in support of its restrictions on attendance at religious services; the State did not extend those restrictions to comparable secular conduct; and thus, the Court held, "the challenged restrictions" were not "of 'general applicability[.]'" *Id*. at 67 (quoting *Lukumi*, 508 U.S. at 546). It followed as a matter of course that the restrictions were invalid.

*Monclova Christian Acad.*, 984 F.3d at 480. This Court decided *Beshear* on November 29, 2020, and an emergency application to the Supreme Court soon followed. As the Panel recognized, the merits of *Beshear* were not reached due to "timing and the impending expiration of the Order." Op. at 22 (citing *Danville Christian Acad., Inc. v. Beshear,* 141 S. Ct. 527, 528 (2020)). Two weeks later, this Court decided *Monclova Christian Academy*, which charted a course consistent with the Supreme Court's reasoning in *Cuomo. Tandon v. Newsom*, discussed in Section II, continued this same course, as the Supreme Court struck down the Ninth Circuit's erroneous application of comparability. And then came *Fulton*, which although it did not specifically address COVID-19 restrictions, affirmed the standard applied by *Monclova Christian Academy* as to whether a law is neutral and generally applicable. Under this standard, the challenged orders are decidedly not neutral and generally applicable, thereby triggering strict scrutiny.

In all this, *Beshear* is the outlier. The Supreme Court did not correct *Beshear*'s errors due to the timing of the emergency motion, and now the Panel followed *Beshear* rather than *Roman Catholic Diocese, Tandon, Monclova Christian*

*Academy*, and *Fulton*. It is not difficult to conclude that, based upon the controlling principle of these Supreme Court decisions, this Circuit should not be following *Beshear*. Rather, it is compelled to follow the more rigorous comparability analysis applied in *Monclova Christian Academy* (and again in *Tandon,* and again in *Fulton*). *Beshear*'s holding can no longer be sustained in light of these subsequent cases. Therefore, the Panel's "exercise of discretion cannot be permitted to stand" because "it rests upon a legal principle that can no longer be sustained." *Agostini v. Felton*, 521 U.S. 203, 238 (1997).

The Panel failed to analyze the comparability of requiring masks during the religious education of young children with Defendants' interests in allowing secular exemptions. The Panel failed to meaningfully consider whether the secular exemptions allowed by Defendants presented a "more serious health risk" than the narrow religious exemption sought by Plaintiffs. Certainly, the fact that the orders exempt anyone performing a public safety role, receiving a personal care service, giving a speech, sitting at a restaurant, *inter alia*, in public and for any length of time, yet disallow comparable conduct in a closed-campus, private religious school with strict safety protocols, is a question that should be reexamined under the correct legal standard on remand. Because this Panel wrongly decided to push *Monclova Christian Academy* to the side, en banc review is warranted to correct this error and

to clarify how the Sixth Circuit analyzes the threshold inquiry of general applicability.

## II. The Panel's Decision Conflicts with *Tandon v. Newsom*.

By reverting this Circuit back to its analysis in *Beshear*, the Panel diverges with the Supreme Court's general applicability analysis in *Tandon v. Newsom*, 141 S. Ct. 1294, 1297-98 (2021).

In *Tandon*, the Ninth Circuit Court held that private religious gatherings are not comparable "in terms of risk to public health or reasonable safety measures to address that risk—to commercial activities, or even to religious activities, in public buildings." *Tandon v. Newsom*, 992 F.3d 916, 920 (9th Cir.), *disapproved in later proceedings*, 141 S. Ct. 1294 (2021). The Supreme Court, however, swiftly reversed the Ninth Circuit's flawed reasoning, issuing a clear directive: "This is the fifth time the Court has summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise." *Tandon*, 141 S. Ct. at 1298. It is this flawed analysis, rejected by the Supreme Court *five times*, that the Panel employed in the instant case. The Panel here held that although masks may be removed at public religious worship services outside of school, for myriad commercial purposes, at tables at public restaurants, and inside public school for speech class, they could not be removed by healthy, young students during religious education.

The Panel, undermining the Supreme Court's reasoning in *Tandon*, decided to create its own comparator for purposes of its First Amendment analysis. The problem here is that the comparators are created by the exemptions permitted by the government, not by judicial architecting. The Panel erroneously confined its comparators to only public and non-religious schools.

In *Tandon*, the Supreme Court warned against applying less favorable conditions to religious exercise on private property than activities such as "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants." *Id.* at 1298. And when COVID restrictions contain "myriad exceptions and accommodations for comparable activities," strict scrutiny must be applied. The Supreme Court further warned that this "standard is not watered down; it really means what it says." *Id.* (internal quotations and citations omitted). The Panel simply did not follow what it says.

## III. The Panel's Decision Conflicts with *Fulton v. City of Philadelphia*.

In *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), the Supreme Court held that Philadelphia's refusal to contract with Catholic Social Services ("CSS") for the provision of foster care services unless CSS agrees to certify same-sex couples as foster parents violated the Free Exercise Clause. As the Court noted, "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized

exemptions." *Id.* at 1871 (internal quotations and punctuation omitted). The Court further noted that "[a] law also lacks general applicability *if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way*." *Id.* at 1877 (emphasis added). When such a law burdens religious exercise, it must survive strict scrutiny. *See id.* at 1879-82.

The Court affirmed that "[a] government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests. . . . Put another way, *so long as the government can achieve its interests in a manner that does not burden religion, it must do so*." *Id.* at 1881 (internal citation omitted). The Court further clarified that "[t]he question, then, is not whether the City has a compelling interest in enforcing its non-discrimination policies *generally*, *but whether it has such an interest in denying an exception to CSS*." *Id.* (emphasis added).

The Panel majority's analysis here, therefore, undercuts one of the primary aims of *Fulton*—to require the government to show why it *must* burden the religious exercise of Plaintiffs when it permits exemptions for secular conduct. The Panel, instead, held that *Fulton* "focused on a contract provision that permitted the commissioner of the city's Department of Human Services to grant exemptions to the non-discrimination clause in her 'sole discretion.'" Op. at 26 (quoting *Fulton*, 141 S. Ct. at 1878). The Panel's attempt to distinguish *Fulton* is fundamentally

flawed. Here, Director Hertel relies on Michigan's Epidemic Order for her authority to issue MDHHS's orders, and she decides, exercising her sole discretion, both the scope of the order and what she permits as exemptions to the order. The Panel even recognizes this as true earlier in its opinion, finding that "MDHHS . . . retains the sole authority to change the mask requirements." Op. at 14.

Here is a critical point that the Panel failed to apprehend: once the government creates a mechanism for permitting individualized exemptions, the law is no longer generally applicable. *Fulton*, 141 S. Ct. at 1871. Moreover, the challenged orders plainly prohibit Plaintiffs' "religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id*. at 1877. The Panel's decision misapprehends the essential holding of *Fulton* and thus misapplies this important and controlling precedent. The Panel's justification for undermining the central holding of *Fulton* should not become controlling precedent of this Circuit.

## CONCLUSION

The Panel's decision is irreconcilable with controlling precedent of this Circuit and of the United States Supreme Court. En banc review is warranted.

Respectfully submitted,

GREAT LAKES LAW CENTER    AMERCAN FREEDOM LAW CENTER

/s/ *Erin Elizabeth Mersino*       /s/ *Robert J. Muise*
Erin Elizabeth Mersino, Esq.      Robert J. Muise, Esq.

                                      *Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

I certify that the attached petition is proportionally spaced, has a typeface of

14 points Times New Roman, is 3,591 words, and is 15 pages in length.

Respectfully submitted,

GREAT LAKES JUSTICE CENTER

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino (P70886)

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021 I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I also certify that on September 8, 2021, I electronically filed the foregoing with a corrected Certificate of Compliance with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

The Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.  I further certify that all of the participants in this case are registered CM/ECF users.

GREAT LAKES JUSTICE CENTER

/s/ Erin Elizabeth Mersino
Erin Elizabeth Mersino (P70886)

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S.,

                    *Plaintiffs-Appellants*,

      *v.*

ELIZABETH HERTEL, in her official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA VAIL, in her official capacity as the Health Officer of Ingham County; CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney,

                    *Defendants-Appellees*.

> No. 20-2256

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cv-01016—Paul Lewis Maloney, District Judge.

Argued: July 21, 2021

Decided and Filed: August 23, 2021

Before: SILER, MOORE, and DONALD, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Erin Elizabeth Mersino, GREAT LAKES JUSTICE CENTER, Lansing, Michigan, for Appellants. Daniel J. Ping, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Elizabeth Hertel. Ann M. Sherman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Dana Nessel.

**ON BRIEF:** Erin Elizabeth Mersino, GREAT LAKES JUSTICE CENTER, Lansing, Michigan, Robert J. Muise, AMERICAN FREEDOM LAW CENTER, Ann Arbor, Michigan, for Appellants. Daniel J. Ping, Joseph T. Froehlich, Ann M. Sherman, Rebecca A. Berels, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for State of Michigan Appellees. Bonnie G. Toskey, Sarah K. Osburn, COHL, STOKER & TOSKEY, P.C., Lansing, Michigan, for Appellees Linda Vail and Carol Siemon. Alex J. Luchenitser, Richard B. Katskee, AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE, Washington, D.C., for Amici Curiae.

MOORE, J., delivered the opinion of the court in which DONALD, J., joined, and SILER, J., joined in part. SILER, J. (pg. 31), delivered a separate opinion concurring in part and dissenting in part.

———————————

# OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. To control the spread of COVID-19, the Michigan Department of Health and Human Services ("MDHHS") required that all persons five years of age and older wear a mask in indoor public settings, including while attending public and private K–12 schools. Plaintiffs Resurrection School, a Catholic elementary school in Lansing, Michigan, and two parents with children enrolled at the school, on behalf of themselves and their minor children, challenge the mask requirement as a violation of their free exercise of religion, equal protection, and substantive due process rights. Since Plaintiffs filed suit, MDHHS has rescinded almost all COVID-19 pandemic emergency orders, including the challenged mask requirement. We hold that Plaintiffs' challenge to the mask requirement is not moot, and we **AFFIRM** the district court's denial of Plaintiffs' motion for a preliminary injunction on the merits.

## I. BACKGROUND

### A. COVID-19 in Michigan

COVID-19 is a novel respiratory infection first discovered in December 2019. Since then, 925,377 Michigan residents have been diagnosed with COVID-19 and 20,076 Michigan residents have died from the disease. Mich. COVID-19 Dashboard, Cumulative Confirmed Cases and Deaths Among Confirmed Cases, https://www.michigan.gov/coronavirus/0,9753,7-

406-98163_98173---,00.html (accessed Aug. 19, 2021).    Although young children have been largely spared the worst of the disease's impact, six children ages 5–14 have died of COVID-19 in Michigan, *Number of COVID-19, Pneumonia and Influenza Deaths by Age of Death, Michigan Occur[r]ences*, MDHHS, https://www.mdch.state.mi.us/osr/Provisio nal/CvdTable2.asp (accessed Aug. 19, 2021), and 1,280 children ages 0-17 have been hospitalized with COVID-19, COVID Data Tracker, CDC, https://covid.cdc.gov/covid-data-tracker/#new-hospital-admissions (accessed Aug. 19, 2021). One-hundred-and-sixty-one children in Michigan who recovered from COVID-19 went on to develop Multisystem Inflammatory Syndrome in Children ("MIS-C"), a condition causing inflammation and damage to organs.    MIS-C Data and Reporting, MDHHS, https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173_104661---,00.html (accessed Aug. 19, 2021); *see also* R. 16-2 (Vail Aff. ¶ 7) (Page ID #538) (describing MIS-C and other long-term complications of COVID-19 infection). Children infected with COVID-19 can spread the disease to their parents and grandparents, teachers and school staff, and other medically vulnerable Michiganders.

COVID-19 primarily spreads through airborne particles that accumulate in enclosed spaces with inadequate ventilation, respiratory droplets produced when a person coughs, sneezes, or talks, and occasionally through contact with objects contaminated with the virus.    *How COVID-19 Spreads*, CDC (July 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.    Individuals infected with COVID-19 can spread the disease while asymptomatic and pre-symptomatic, and many individuals infected with COVID-19 experience mild symptoms.  *See* R. 14-6 Ex. 5 (Nathan Furukawa et al., *Evidence Supporting Transmission of Severe Acute Respiratory Syndrome Coronavirus 2 While Presymptomatic or Asymptomatic*, 26 Emerg. Infect. Dis. (July 2020)) (Page ID #297–303).  These features make COVID-19 difficult to control.  As a result, universal community use of masks is a widely accepted method to prevent the spread of COVID-19, *Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, CDC (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html, despite Plaintiffs' contentions to the contrary, R. 21 (First Amended Compl. ¶¶ 75–77) (Page ID #648–49).

Since Plaintiffs filed their lawsuit in October 2020, the Food and Drug Administration ("FDA") has authorized three COVID-19 vaccines for emergency use, including one for use in persons twelve years of age and older.  *Different COVID-19 Vaccines*, CDC (May 27, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html.   Two of the vaccine manufacturers, Pfizer-BioNTech and Moderna, are testing their vaccines in children ages six months to eleven years old.  Apoorva Mandavilli, *In the U.S., Vaccines for the Youngest Are Expected This Fall*, N.Y. TIMES (June 8, 2021), https://www.nytimes.com/2021/06/08/health/us-vaccines-children-fall.html.  Although initially Pfizer-BioNTech hoped to apply for emergency authorization of the vaccine for children ages five to eleven years old in September, and Moderna sometime in the fall, *id.*, the FDA has requested that the two vaccine manufacturers increase the size of their studies, which may delay the FDA's authorization of the vaccine for children younger than twelve, *see* Sheryl Gay Stolberg et al., *At the F.D.A.'s Urging, Pfizer-BioNTech and Moderna Are Expanding Their Trials for Children 5 to 11*, N.Y. TIMES (July 26, 2021), https://www.nytimes.com/2021/07/26/us/politics/fda-covid-vaccine-trials-children.html.

**B. Michigan's Mask Requirement**

Masks have been a significant part of Michigan's COVID-19 response, especially prior to the widespread availability of safe and effective vaccines.  Beginning on April 27, 2020, Michigan required all persons "able to medically tolerate a face covering" to wear a face covering "when in any enclosed public space."  E.O. 2020-59 § 15(a) (Apr. 24, 2020); *see also* E.O. 2020-147 § 1 (July 10, 2020) (reiterating that all persons ages five and older must wear a face covering in public except in limited circumstances or if medically unable to wear a face covering).

In preparation for the 2020–2021 school year, Governor Gretchen Whitmer issued the MI Safe  Schools  Roadmap  ("Roadmap"),  which  outlined  safety recommendations and requirements for K–12 schools.  *MI Safe Schools: Michigan's 2020-21 Return  to  School Roadmap*  (June  30,  2020), https://www.michigan.gov/documents/whitmer/MI_Safe_Schools_Roadmap_FINAL_695392_7. pdf.  The Roadmap varied its prescriptions based on the prevalence of COVID-19 in the

community and the grade of the students.  *Id.* at 9.[1]  The Roadmap strongly recommended, but did not require, students in grades K–5 to wear a face covering in the classroom so long as they did not come into contact with students in another class.  *MI Safe Schools*, at 22; *see also* E.O. 2020-142 § (2)(b)(1)(E) (June 30, 2020) (incorporating requirement into an executive order).

On September 25, 2020, citing "the higher incidence of [COVID-19] cases among children in recent months," "the clear effectiveness of masking as mitigation strategy," and the "absence of a widespread vaccine," Whitmer issued an executive order mandating that children in grades K-5 also wear a face covering in classrooms.  E.O. 2020-185 § 1 (Sept. 25, 2020). A few days later, the Michigan Supreme Court concluded that the 1945 law under which Whitmer had been issuing executive orders regarding the COVID-19 pandemic was an improper delegation of legislative power in violation of the Michigan Constitution.  *See In re Certified Questions from United States Dist. Ct., W. Dist. of Michigan, S. Div.*, 958 N.W.2d 1 (Mich. 2020).  MDHHS then issued an order reinstating the requirement that children in grades K–5 wear a face covering in the classroom.  10/05/20 MDHHS Order §§ 2–3.  MDHHS issued another near-identical order on October 9, 2020.  10/09/20 MDHHS Order.  The Ingham County Health Department, which includes Lansing, also issued its own emergency order requiring all persons who leave their home or place of residence to wear a face covering, including children in grades K-5.  Ingham Cnty. E.O. 2020-21 (Oct. 4, 2020); *see also* R. 16-2 Ex B. (Vail Aff. ¶¶ 13– 22) (Page ID #539–41) (describing the Ingham County order).  On October 23, 2020, the Ingham County Health Department rescinded its order after it confirmed that the MDHHS Orders included all requirements of the county order.  *Id.* ¶ 23 (Page ID #541).

---

[1]The Roadmap corresponds to the MI Safe Start Plan, which adopted a six-phase approach to reopening the state based on the prevalence of disease.  In Phase 1, a region is experiencing "[i]ncreasing number of new cases every day, likely to overwhelm the health system" and only critical infrastructure is permitted to remain open, whereas in Phase 6, the region has community immunity sufficient to minimize community spread and restrictions are lifted.  *MI Safe Start: A Plan to Re-engage Michigan's Economy*, at 2 (May 7, 2020), https://www.michigan.gov/documents/whitmer/MI_SAFE_START_PLAN_689875_7.pdf.  When a region is in at least Phase 4, the Roadmap permitted schools to reopen for in-person learning with certain safety protocols.  *MI Safe Schools*, at 21.  In practice, Michigan treated in-person K–12 instruction more permissively than the terms of the MI Safe Start Plan and the Roadmap.  The MI Safe Start plan permitted schools to reopen for in-person instruction only in Phases 5 and 6, *MI Safe Start*, at 2, and MDHHS permitted K–8 schools to remain open for in-person instruction even when all regions were at the highest risk level, 11/15/20 MDHHS Order.

Since then, MDHHS has issued several orders slightly changing the circumstances for when a mask is required.  The March 2, 2021 Order, which is the focus of the parties' briefing,[2] provides in relevant part:

7.  **Face mask requirement at gatherings.**

    (a)  All persons participating in gatherings are required to wear a face mask.

    (b)  As a condition of gathering for the purpose of transportation, transportation providers must require all staff and patrons to use face masks, and must enforce physical distancing among all patrons to the extent feasible.

    (c)  Except as provided elsewhere in this order, a person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, must prohibit gatherings of any kind unless the person requires individuals in such gatherings (including employees) to wear a face mask, and denies entry or service to all persons refusing to wear face masks while gathered.

    (d)  A person responsible for a business, store, office, government office, school, organized event, or other operation, or an agent of such person, may not assume that someone who enters the facility without a face mask falls within one of the exceptions specified in section 8 of this order, including the exception for individuals who cannot medically tolerate a face mask.  An individual's verbal representation that they are not wearing a face mask because they fall within a specified exception, however, may be accepted.

. . .

8.  **Exceptions to face mask requirements.**  Although a face mask is strongly encouraged even for individuals not required to wear one (except for children under the age of 2), the requirement to wear a face mask in gatherings as required by this order does not apply to individuals who:

    (a)  Are younger than 5 years old, outside of a child care organization or camp setting (which are subject to requirements set out in section 7(e));

    (b)  Cannot medically tolerate a face mask;

---

[2]Defendants acknowledge that MDHHS has made "minor alterations" to the exceptions between the 10/09/20 MDHHS Order and the 03/02/21 MDHHS Order, and thus, refer to "the orders" collectively.  Hertel & Nessel Br. at 8 n.6.  For instance, during the winter surge in COVID-19 cases, MDHHS prohibited any non-essential personal care services that required removal of face masks, most organized sports, and indoor dining.  11/15/20 MDHHS Order.  Accordingly, we use "MDHHS Orders" to refer to the orders leading up to the rescission of the mask requirement.

(c)   Are eating or drinking while seated at a food service establishment or at a private residence;

(d)   Are exercising outdoors and able to consistently maintain 6 feet of distance from others;

(e)   Are swimming;

(f)   Are receiving a medical or personal care service for which removal of the face mask is necessary;

(g)   Are asked to temporarily remove a face mask for identification purposes;

(h)   Are communicating with someone who is deaf, deafblind, or hard of hearing and whose ability to see the mouth is essential to communication;

(i)   Are actively engaged in a public safety role, including but not limited to law enforcement, firefighters, or emergency medical personnel, and where wearing a face mask would seriously interfere in the performance of their public safety responsibilities;

(j)   Are engaging in a religious service;

(k)   Are giving a speech for broadcast or to an audience, provided that the audience is at least 12 feet away from the speaker; or

(l)   Are participating in a testing program specified in MDHHS's document entitled Guidance for Athletics issued February 7, 2021, and are engaged in practice or competition where the wearing of a mask would be unsafe.

03/02/21 MDHHS Order.  In accordance with Mich. Comp. Laws § 333.2261, "violation of this order is a misdemeanor punishable by imprisonment for not more than 6 months, or a fine of not more than $200.00, or both."  *Id*. § 10(e).  Further, MDHHS promulgated emergency rules stating that a violation of the MDHHS Orders carries "a penalty of up to $1,000 for each violation or day that a violation continues."  MDHHS Emergency Rules (Oct. 20, 2020).

On May 14, 2021, in response to CDC guidance that fully vaccinated persons no longer need to wear a mask in most settings, MDHHS added fully vaccinated persons to the list of exceptions to the mask requirement.  05/14/2021 MDHHS Order.  One month later, MDHHS rescinded almost all COVID-19 pandemic emergency orders, including the challenged mask requirement, because of the reduction in COVID-19 test positivity rates, case rates, hospitalizations, and deaths, the availability of COVID-19 vaccines, the availability of therapeutics, such as monoclonal antibodies, and warmer weather.  06/17/21 MDHHS Order. The 06/17/21 MDHHS Order became effective June 22, 2021.  *Id.*

MDHHS's rescission coincided with summer break, which leaves open the question of what restrictions MDHHS may impose for the 2021–2022 school year. MDHHS's interim guidance for schools recommends that schools use multiple prevention strategies, including face masks, to limit transmission in school. MDHHS, *Interim Recommendations for Operating Schools Safely When There Is COVID-19 Community Transmission* (June 25, 2021), https://www.michigan.gov/documents/coronavirus/COVID-19_Guidance_for_Operating_Schools_Safely_728838_7.pdf.

Other public-health authorities have weighed in on mitigation measures for in-person education for the 2021–22 school year. In consideration of new evidence regarding the B.1.617.2 (Delta) coronavirus variant, the CDC's guidance for K–12 schools now recommends that all persons wear a mask indoors at school regardless of vaccination status. *Guidance for COVID-19 Prevention in K-12 Schools*, CDC (updated Aug. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html. The American Academy of Pediatrics ("AAP") also recommends that all students and staff— regardless of whether they are fully vaccinated against COVID-19—wear a mask indoors at school as a "necessary measure[] to limit the community spread of SARS-CoV-2 to ensure schools can remain open and safe for all students." *COVID-19 Guidance for Safe Schools*, Am. Acad. Pediatrics (last updated July 18, 2021), available at https://services.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/. Masks, according to the AAP, are part of a "multi-pronged, layered approach" that together "will make in-person learning safe and possible." *Id.*

Some states and localities have adopted universal mask requirements in line with public health authorities' recommendations. *See, e.g.*, Kalamazoo Cnty. Health Dep't 08/18/2021 Order (requiring that children in grades K–6 and those providing services to children in grades K–16 wear a mask in school settings); Ky. E.O. 2021-585 (Aug. 10, 2021); Cal. Dep't Pub. Health, *COVID-19 Public Health Guidance for K-12 Schools in California, 2021-22 School Year* (July 12, 2021), https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/K-12-Guidance-2021-22-School-Year.aspx (requiring that all persons, including children in grades K–5, wear masks at school); *K-12 School Updates*, Del. Div. Pub. Health (May 12,

2021), https://coronavirus.delaware.gov/schools-and-students/school-updates/ (same). Other states have recommended, but not required, students in grades K–12 to wear masks in school. *See, e.g.*, Ohio Dep't Pub. Health (July 26, 2021), https://coronavirus.ohio.gov/static/responsible/schools/K-12-Schools-Guidance.pdf.

Despite the CDC's and the AAP's guidance and the decisions of other states to impose mask requirements in school, Whitmer has stated that she does not expect MDHHS to issue a mask requirement or other pandemic orders "in the near future and maybe not ever." Dave Boucher & Kristen Jordan Shamus, *Whitmer: No New State Mask Rule Expected Despite Updated CDC Guidance*, Det. Free Press (July 27, 2021), https://www.freep.com/story/news/health/2021/07/27/whitmer-no-new-state-mask-rule-despite-updated-cdc-guidance/5385179001/. Hertel has indicated that she "expect[s] and encourage[s] schools when they go back to have mask requirements for kids younger than 12 and those who haven't been vaccinated." *MDHHS Director: State Urging Schools to Have Mask Mandates for Kids Under 12, Those Not Vaccinated*, WXYZ-Det. (July 22, 2021), https://www.wxyz.com/news/coronavirus/mdhhs-director-state-urging-schools-to-have-mask-mandates-for-kids-under-12-those-not-vaccinated.

**C. Plaintiffs' Lawsuit**

On October 22, 2020, Plaintiffs filed a complaint in the U.S. District Court for the Western District of Michigan. Plaintiffs allege that the MDHHS Orders violate their rights to free exercise, equal protection, substantive due process, freedom of speech, and freedom of association. R. 1 (Compl. ¶¶ 135–41, 163–85) (Page ID #22–23, 27–30). In addition to these constitutional claims, Plaintiffs argued that the 10/05/20 MDHHS Order is an unlawful exercise of authority under Michigan law and violates the Michigan constitution's separation of powers and non-delegation clauses. *Id.* ¶¶ 142–62 (Page ID #24–26).

The declaration submitted by the principal of Plaintiff Resurrection School, Jacob Allstott, attests that MDHHS's mask requirement for students in grades K–5 violates Resurrection School's sincerely held religious beliefs because it interferes with the school's religiously oriented disciplinary policies and prevents younger students from partaking fully in a

Catholic education.[3]  R. 8-1 (Allstott Decl. ¶¶ 41–58) (Page ID #178–80).  The declarations submitted by the Plaintiff parents assert that their children find masks uncomfortable and distracting from their religious education, and that the mask requirement conflicts with "the right [as a parent] to choose a school for them which corresponds to their own convictions."  R. 8-2 (Mianecki Decl. ¶ 59) (Page ID #190) (quoting Catechism of the Catholic Church ("CCC") § 2229); R. 8-3 (Smith Decl. ¶ 40) (Page ID #197–98).

Plaintiff Christopher Mianecki attests that wearing a mask in the classroom "interferes with [his children's] ability to engage in their elementary school classroom and its Catholic, religious teachings."  R. 8-2 (Mianecki Decl. ¶ 52) (Page ID #189).  He provides specific examples of how the requirement that children wear masks in the classroom affects his three children who are enrolled at Resurrection School.  He states that wearing a mask negatively impacts his children's focus, *id.* ¶ 33 (Page ID #187), "diverts [their] attention away from the lesson taught in class," *id.* ¶ 36 (Page ID #187), and "negatively affect[s] [their] ability to breathe effectively," *id.* ¶ 38 (Page ID #187).

Plaintiff Stephanie Smith states that her child, F.S., is unable to wear a mask because he "suffer[s] from breathing issues," R. 8-3 (Smith Decl. ¶ 8) (Page ID #194), and "is highly susceptible to respiratory infections that quickly turn into additional infections such as bronchitis," *Id.* ¶ 9 (Page ID #194).  Despite Smith's observation that F.S. is unable to wear a mask because of his health conditions, F.S.'s pediatrician determined that F.S. did not qualify for a medical exemption.[4]  *Id.* ¶ 11 (Page ID #194).  As a result, Smith is "educating F.S. at home where he is not mandated to wear a mask, and F.S. is on a long-term absence from his Catholic

---

[3]In the initial complaint, Plaintiffs also argued that "[i]n accordance with the teachings of the Catholic faith, Resurrection School believes that every human has dignity and is made in God's image and likeness. Unfortunately, a mask shields our humanity.  And because God created us in His image, we are masking that image."  R. 1 (Compl. ¶ 22) (Page ID #5).

[4]The MDHHS Orders exempted children who "[c]annot medically tolerate a face mask" from complying with the face mask requirements.  03/02/21 MDHHS Order § 8(b).  The MDHHS Orders clarify that "[a]n individual's verbal representation that they are not wearing a face mask because they fall within a specified exception . . . may be accepted."  *Id.* § 7(d).  Organizations may choose to require documentation that an individual cannot medically tolerate a face mask.  *See, e.g.*, Diocese of Lansing, *Return to Learn: Phase 4 Plan*, https://www.dioceseoflansing.org/education/phase-4-plan (requiring that students and staff obtain a "written and signed verification by a physician" in order not to wear a mask while at school).

school." *Id.* ¶ 16 (Page ID #195). Smith and her husband "cannot give F.S. the same Catholic education that he receives at Catholic school with his classmates." *Id.* ¶ 20 (Page ID #195).[5]

Plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction seeking to enjoin Defendants from enforcing the 10/05/20 MDHHS Order against Resurrection School and the other plaintiffs. R. 7 (Pls.' Mot. for TRO & Prelim. Inj.) (Page ID #65–70). The district court denied Plaintiffs' expedited ex parte motion for a TRO, concluding that Plaintiffs could not establish that they would experience irreparable harm without the order because they had unreasonably delayed in filing for emergency ex parte injunctive relief.[6] R. 11 (Order Denying Mot. for TRO at 3–4) (Page ID #207–08). Defendants then filed motions to dismiss, R. 13 (Gordon & Nessel Joint Mot. to Dismiss) (Page ID #215–18); R. 15 (Vail & Siemon, Mot. to Dismiss) (Page ID #475–76), and responses in opposition to Plaintiffs' request for a preliminary injunction, R. 18 (Gordon & Nessel, Resp. in Opp. to Pls.' Mot. for TRO & Prelim. Inj.) (Page ID #565–60); R. 19 (Vail & Siemon, Resp. in Opp. to Pls.' Mot. for TRO & Prelim. Inj.) (Page ID #602–04).

After Defendants responded to Plaintiffs' initial complaint and motion for a TRO and preliminary injunction, Plaintiffs filed an amended complaint. R. 21 (First Am. Compl.) (Page ID #636–68). The First Amended Complaint narrowed Plaintiffs' claims to violations of free exercise, equal protection, and substantive due process, and the Michigan constitutional and state-law claims. *Id.* The district court determined that the amended complaint did not render Defendants' motions to dismiss moot and required Plaintiffs to respond to the motions to dismiss. R. 23 (12/10/20 Order) (Page ID #692).

---

[5]We are troubled by public statements suggesting that Resurrection School did not require students in grades K–5 to wear masks during the entire school year, Cody Butler, *Federal Appeals Court to Hear Arguments over Michigan Mask Mandate*, WILX-Lansing (July 20, 2021), https://www.wilx.com/2021/07/20/federal-appeals-court-hear-arguments-over-michigan-mask-mandate/, when they have made contrary representations to this court and the district court.

[6]The district court noted that Whitmer and MDHHS issued executive orders requiring individuals over the age of five to wear a face covering indoors on July 17, 2020 and July 29, 2020 respectively, and thus, the "Plaintiffs cannot rely on the October 2, 2020 Opinion from the Michigan Supreme Court as the critical event." R. 11 (Order at 4) (Page ID #208).

The district court denied Plaintiffs' motion for a preliminary injunction. *Resurrection Sch. v. Gordon*, 507 F. Supp. 3d 897 (W.D. Mich. 2020). Applying *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020) (order), the district court determined that Plaintiffs were unlikely to succeed on the merits of their free-exercise challenge to the 10/05/2020 MDHHS Order. *Id.* at 900–01. First, the district court found that the 10/05/2020 MDHHS Order was neither motivated by animus against people of faith or a specific faith nor limited to regulating only religious activity. *Id.* at 901. The district court then determined that the order was neutral and generally applicable because it "require[d] all individuals over the age of five to wear a face mask in public. This requirement is in place whether they are attending a religious school, a secular school, running errands, or participating in some other facet of daily life." *Id.* at 901–02. The exceptions to the order are "narrow and discrete," and "apply to public schools and private schools equally, and they apply to secular schools and religious schools equally." *Id.* at 902. Thus, the district court concluded that Plaintiffs were unlikely to succeed on the merits of their free exercise claim. *Id.*

The district court dismissed Plaintiffs' claim that the Order violated their equal-protection rights by permitting individuals to remove their face covering in certain circumstances, because "[t]here is nothing in the face-mask requirement that treats similarly situated groups of individuals different." *Id.* As for Plaintiffs' state-law claims, the district court declined to address this "novel question of state law for the first time" at this stage of litigation. *Id.* Although the district court did not address Plaintiffs' substantive-due-process claim by name, it concluded at the end that "Plaintiffs have failed to establish a lik[e]lihood of success on the merits on *any* of their claims." *Id.* (emphasis added).

Plaintiffs timely appealed. R. 25 (Not. of Appeal) (Page ID #700–01). Defendants move to dismiss the appeal as moot because MDHHS has rescinded the mask requirements. No. 20-2256, R. 34 (Hertel & Nessel Mot. to Dismiss Appeal as Moot); No. 20-2256, R. 37 (Siemon & Vail Mot. to Dismiss Appeal as Moot). Plaintiffs oppose the motion. No. 20-2256, R. 38 (Pls.' Resp. Mot. to Dismiss Appeal as Moot).

The district court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## II. ANALYSIS

### A. Mootness

Defendants argue that we lack jurisdiction because Plaintiffs' claims are moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "We do not have the power to adjudicate disputes that are moot, and '[t]he mootness inquiry must be made at every stage of a case.'" *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)). There are two relevant exceptions to the mootness doctrine. First, voluntary cessation of the challenged conduct does not moot a case unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). Second, a case will not become moot if the injury is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). Plaintiffs argue that their case should proceed under both exceptions, and we address both in turn.

#### 1. Voluntary Cessation

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). Where the defendant voluntarily ceases the challenged conduct, the defendant must establish that: "there is no reasonable expectation that the alleged violation will recur"; and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[7] *Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (quoting *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)). We caution that "[t]he burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)).

---

[7]The second requirement is not at issue here.

We generally treat "cessation of the allegedly illegal conduct by government officials . . . with more solicitude . . . than similar action by private parties." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)). "This [voluntary cessation] exception properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation." *Ky. Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997); *see also Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012) ("[S]elf-correction [by government officials] provides a secure foundation for a dismissal based on mootness so long as it appears genuine." (quoting *Mosley*, 920 F.2d at 415)).

Plaintiffs argue, and Defendants acknowledge, that because Defendants' "discretion to effect the change lies with one agency or individual, . . . significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim," *Speech First*, 939 F.3d at 768. Hertel & Nessel Reply at 4; Pls.' Resp. at 7. Although MDHHS, like the Defendants in *Speech First*, retains the sole authority to change the mask requirements, this case is distinguishable from *Speech First* because MDHHS rescinded the challenged orders in response to "changing circumstances." Defendants Hertel & Nessel offer evidence that the policy change was genuine, including that the policy change reflects increased access and eligibility for vaccines, that Michigan joins other states in rescinding their mask requirements,[8] and that MDHHS rescinded almost all COVID-19 orders, not merely the orders at issue here.

Although the Supreme Court has addressed mootness in the context of COVID-19 restrictions, the factual circumstances are distinguishable from those present here. In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68–69 (2020), the Supreme Court held that the plaintiffs' challenge to a state COVID-19 pandemic order limiting attendance at religious services was not moot even though the state had relaxed the attendance limitations in response to

---

[8]Defendants note that as of July 2021 thirty-one states have rescinded their mask requirements. Hertel & Nessel Reply at 5 n.4 (citing Andy Markowitz, *State-by-State Guide to Face Mask Requirements*, AARP (July 12, 2021), available at https://www.aarp.org/health/healthy-living/info2020/states-mask-mandates-coronavirus html.). This argument cuts both ways because many states have imposed mask requirements for K–12 instruction, *see* Part I.B, and some states and localities have recently reimposed broad indoor mask requirements following a new surge in COVID-19 cases, *see* Nev. Exec. Directive. 047 (July 27, 2021) (requiring mask usage by all persons in areas with substantial or high transmission of COVID-19); La. Procl. No. 2021-137 (Aug. 2, 2021) (implementing a statewide mask mandate).

declining COVID-19 cases. The Court reasoned that the plaintiffs "remain under a constant threat" that the state will reimpose attendance limits without notice and "bar individuals in the affected area from attending services before judicial relief can be obtained." *Id.* at 68. The state health department assigned areas to different risk categories based on the severity of the COVID-19 outbreak, and imposed defined restrictions on activity. *Id.* at 66. The state continued to use this framework, meaning that the plaintiffs remained at risk of restrictions on attendance at religious services if the number of COVID-19 cases, deaths, and hospitalizations increased. *Id.* at 68. Here, Defendants do not presently use a similar framework for imposing mask requirements and other pandemic restrictions. To the contrary, Defendants at present have rescinded all pandemic restrictions.

Similarly, in *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam), the Supreme Court held that the plaintiffs' challenge to the state COVID-19 pandemic order limiting gatherings, including gatherings for at-home religious activities, was not moot even though the defendants altered the guidance during litigation. The Court explained that

> even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to such relief where the applicants "remain under a constant threat" that government officials will use their power to reinstate the challenged restrictions.

*Id.* at 1297 (quoting *Catholic Diocese of Brooklyn*, 141 S. Ct. at 68). In concluding that plaintiffs' challenge was not moot, the Court noted that "the previous restrictions remain in place until April 15th, and officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time." *Id.* (quoting *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 720 (2021) (statement of Gorsuch, J.)).

The *Tandon* Court's conclusion rested on its perception that state officials had a "track record" of altering COVID-19 guidance, and that it had previously "summarily rejected the Ninth Circuit's analysis of California's COVID restrictions on religious exercise" four times. 141 S. Ct. at 1297. In contrast here, Defendants have been consistent in their approach to mask requirements. For the 2020–21 school year, excluding a few weeks at the beginning of the school year, Defendants required students in grades K–5 to wear masks in the classroom.

MDHHS altered its mask requirements only in May 2021 in response to the CDC's guidance that individuals who were vaccinated are unlikely to transmit COVID-19, and MDHHS eliminated the mask requirements in June 2021 in response to sustained decreases in the number of COVID-19 cases, hospitalizations, and deaths and the wide availability of safe and effective vaccines.

As for our own circuit, in an unpublished case reviewing a COVID-19 public-health order, we declined to apply the voluntary-cessation exception to mootness where the Governor replaced an executive order with a recommendation. *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020) (order); *cf. Maryville Baptist Church, Inc. v. Beshear*, 977 F.3d 561, 566 (6th Cir. 2020) (per curiam) (remanding to the district court to permit it to consider "whether these cases have become moot in light of the Governor's new orders"). In distinguishing the case from *Catholic Diocese of Brooklyn*, we emphasized that "there, unlike here, the challenged order remained in force subject to the apparent whims of the Governor, to whom a presumption of regularity did not apply." *Pleasant View Baptist Church*, 838 F. App'x at 939.[9]

In some ways, Defendants' argument that their rescission of the challenged MDHHS orders moots Plaintiffs' claims is stronger than the one accepted in *Pleasant View Baptist Church*. In *Pleasant View Baptist Church*, we relied on the Governor's public statements that he would rely on recommendations instead of mandates, which he made prior to the widespread availability of effective vaccines. MDHHS's rescission of the challenged orders, by contrast, reflects widespread availability of and increased eligibility for effective COVID-19 vaccines. On the other hand, *Pleasant View Baptist Church* involved school closures, which are a more onerous public health measure than requiring that students wear masks at school. In fact, MDHHS and other public-health authorities recommend that all persons wear masks in school to ensure that schools can maintain in-person learning. *See, e.g.*, MDHHS, *Interim Recommendations for Operating Schools Safely When There Is COVID-19 Community Transmission* (June 25, 2021), https://www.michigan.gov/documents/coronavirus/COVID-

---

[9]Plaintiffs suggest without explanation that "*Tandon* adopted a different analysis from *Pleasant View Baptist Church* and a different standard." Pls.' Resp. at 12. Plaintiffs' argument is unavailing. The *Tandon* Court arrived at a different conclusion regarding mootness than we did in *Pleasant View Baptist Church* because the Court was responding to the distinct facts of that case, not because it applied a different standard.

19_Guidance_for_Operating_Schools_Safely_728838_7.pdf. ("Schools can layer multiple prevention strategies developed by the Centers for Disease Control and Prevention (CDC) to prevent transmission within school buildings, reduce disruptions to in-person learning, and help protect the people who are not fully vaccinated, which currently includes all children under the age of 12 years.").

We conclude that Defendants cannot meet the heavy burden of establishing that it is "absolutely clear" that they will not reimpose a mask requirement, especially for children younger than twelve who cannot be vaccinated. We do not doubt the sincerity of MDHHS's statements that they have no intention to reimpose a mask requirement like the one challenged by Defendants. We also recognize that the rescission of all pandemic orders, including the mask requirement, is unique because it reflects the wide availability of safe and effective vaccines. At the same time, the FDA has not yet authorized their use in persons younger than twelve, the group comprising students in grades K–5. MDHHS has previously reimposed certain pandemic emergency orders and tightened mask requirements in response to increasing COVID-19 cases, hospitalizations, and deaths. Considering the very real possibility that MDHHS may be faced again with escalating COVID-19 cases, hospitalizations, and deaths, we hold that Defendants have not met their "heavy burden" of showing that it is "absolutely clear" that they will not reimpose impose a mask requirement, including for children in grades K–5 receiving in-person instruction. Defendants' rescission of the challenged MDHHS Orders does not moot Plaintiffs' claims.

### 2. Capable of Repetition, Yet Evading Review

Plaintiffs' claims further come within the exception to the mootness doctrine for actions that are "capable of repetition, yet evading review." Pls.' Resp. at 10–14. This exception is limited "to situations where: '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309 (6th Cir. 2004) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975)). As the party asserting this exception, Plaintiffs bear the burden of proof. *Lawrence*

*v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005).  Plaintiffs satisfy both requirements for this exception.

Plaintiffs have satisfied the first prong.  Although Plaintiffs filed their complaint and motion for a preliminary injunction in October 2020, the school year ended prior to when this case could reach the court of appeals.  It is true that Plaintiffs did not take advantage of opportunities to expedite our review of the case.[10]  Nonetheless, the Supreme Court has found periods of up to two years to be too short to be fully litigated.  *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (holding that a procurement contract that expires in two years does not permit judicial review); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 390–91 (6th Cir. 2001) (holding that two years to challenge to a local ordinance prohibiting individuals with a sex-crime history to work for a sexually oriented business was too short in duration).  Specific to the educational context, we have held, albeit in an unpublished decision, that an individualized education program lasting a school year is too short in duration to litigate to conclusion.  *Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 980 (6th Cir. 2012).

Plaintiffs also satisfy the second requirement of the "capable of repetition, yet evading review" exception.  This is in part because the standard is a forgiving one.  "Recurrence of the issue need not be more probable than not; instead, the controversy must be capable of repetition."  *Barry v. Lyon*, 834 F.3d 706, 715 (6th Cir. 2016).  This standard provides that "the chain of potential events does not have to be air-tight or even probable to support the court's finding of non-mootness."  *Id.* at 716.

---

[10]Plaintiffs note that "[t]he District Court's decision resulted in nine months of orders that stripped Appellants from their sincerely held right to religious exercise, equal protection of the law, and substantive due process." Pls.' Resp. at 13.  But Plaintiffs are at least partly responsible for delays in this litigation.  Plaintiffs delayed in filing their complaint in federal court until October 22, 2020 and their emergency motion for a TRO or preliminary injunction until October 27, 2020, even though Governor Whitmer issued her initial executive order requiring that students in grades K–5 wear masks on September 25, 2020, E.O. 2020-185 § 1 (Sept. 25, 2020), and MDHHS issued its first order on October 5, 2020, 10/05/20 MDHHS Order §§ 2–3.  Plaintiffs also failed to take advantage of opportunities to expedite the litigation.  For instance, Plaintiffs could have filed a motion for an injunction pending appeal, as other parties challenging COVID-19 pandemic orders have done, *see, e.g.*, *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020) (granting the plaintiffs' motion for an injunction pending appeal fifteen days after the district court denied their request for a preliminary injunction and twenty-four days after the plaintiffs filed their complaint), or requested expedited briefing or expedited consideration of their appeal.

Although Defendants provide ample reasons—namely the availability of and expanded eligibility for COVID-19 vaccines—that a mandatory requirement that students in grades K–5 wear masks in the classroom is unlikely, that is not the standard. Rather, we look to whether the controversy is capable of repetition. MDHHS acknowledged in its order rescinding the mask requirements that "the COVID-19 pandemic continues to constitute an epidemic in Michigan." 06/17/21 MDHHS Order. Both the CDC's and MDHHS's guidance recommend that students in grades K–12 wear masks in the classroom. This is sufficient to establish that Plaintiffs' claims are capable of repetition, yet evading review.

True, in the election context, we have determined that lawsuits challenging election procedures in light of the COVID-19 pandemic and attendant restrictions are not capable of repetition, yet evading review. Most recently in *Thompson v. DeWine*, -- F.4th --, 2021 WL 3183692 (6th Cir. July 28, 2021), we held that the plaintiffs' challenge to the signature requirements for ballot initiatives was moot as to the 2021 election. In *Thompson*, the plaintiffs argued that "COVID-19 remains a 'full blown crisis' hampering their efforts to gather signatures for 2021 initiatives," and thus their challenge fell under the capable of repetition, yet evading review exception to the mootness doctrine. *Id.* at *4. We concluded, however, that "advancements in the COVID-19 vaccine and treatment" made COVID-19 unlikely to threaten seriously the plaintiffs' ability to collect signatures for the 2021 ballot initiatives. *Id.*; *see also Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 560 (6th Cir. 2021) ("Fortunately, because of advancements in COVID-19 vaccinations and treatment since this case began, the COVID-19 pandemic is unlikely to pose a serious threat during the next election cycle." (citing *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (June 15, 2021)).[11]

These election cases, however, are distinguishable from the present case. First, our decisions in those cases were contingent on the availability of COVID-19 safe and effective

---

[11]Unfortunately, the daily number of COVID-19 cases, hospitalizations, and deaths has since trended significantly upwards. *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (accessed on Aug. 2, 2021).

vaccinations and treatment, which are presently authorized for use by persons old enough to vote and sign petitions for ballot initiatives, but not for children in grades K–5.  Second, in-person instruction meaningfully differs from participation in the electoral process in a way that increases the risk of contracting and transmitting COVID-19.  Whereas participating in the electoral process is a "discrete, individualized, often brief activit[y]," in-person classroom instruction involves "indoor gatherings occurring for hours a day on a daily basis."  Hertel & Nessel Br. at 36.  Finally, although COVID-19 may not pose a serious enough disruption to the electoral process, it may still pose a significant enough problem to compel MDHHS to mandate that persons, especially individuals not yet able to be vaccinated, wear masks.  Accordingly, we conclude that Plaintiffs' claim is not moot and turn to the merits of their challenge.

## B. Standard of Review

We review for abuse of discretion a district court's denial of a preliminary injunction. *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).  "While the ultimate decision to grant or deny a preliminary injunction is reviewed for an abuse of discretion, we review the district court's legal conclusions *de novo* and its factual findings for clear error."  *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).  We have cautioned that "[t]his standard of review is 'highly deferential' to the district court's decision." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007) (quoting *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)).  To summarize, "[w]e 'review the District Court's legal rulings *de novo*' (including its First Amendment conclusion), 'and its ultimate conclusion [as to whether to grant the preliminary injunction] for abuse of discretion.'"  *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 454 (6th Cir. 2014) (quoting *McCreary County v. ACLU of Ky.*, 545 U.S. 844, 867 (2005)).

In determining whether to grant a preliminary injunction, we consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction."  *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012).  Where, as in this case, Plaintiffs "seek[] a preliminary injunction on the basis of a potential constitutional

violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am.*, 697 F.3d at 436 (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). Accordingly, we focus our attention on whether Plaintiffs can establish a likelihood of success on the merits.

## C. Free-Exercise Challenge

Plaintiffs argue that MDHHS's Orders violate their sincerely held religious beliefs because they require students in grades K–5 at religious schools to wear a face covering. We do not question the sincerity of Plaintiffs' beliefs that wearing a mask in the classroom violates their Catholic faith. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."). Defendants largely do not question the sincerity of the Plaintiffs' religious objection to wearing a mask in the classroom.[12]

We begin with the familiar framework for free-exercise claims. Where a challenged law is neutral and of general applicability and has merely an "incidental effect" on Plaintiffs' religious beliefs, Defendants need not show a compelling governmental interest. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *see also Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 878 (1990) (holding that if burdening the exercise of religion is "merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended."). Where the challenged law does not meet these requirements, Defendants must show that the policy is narrowly tailored to serve a compelling state interest. *Church of the Lukumi Babalu Aye*, 508 U.S. at 531–32. This rule, in part, reflected practical concerns with requiring governments to satisfy the stringent standard of establishing a compelling interest for "all actions thought to be religiously commanded." *Smith*,

---

[12]Defendants Vail and Siemon contend in their brief that "Appellants do not cite to any sources to support their position that the Catholic faith or Catholic theology is in any way opposed to the use of prophylactic masks during a global pandemic," Vail & Siemon Br. at 6, or "provide any examples of ways in which masks interfere with or burden their religious beliefs," *id.* at 19. Plaintiffs' objections to masks admittedly are confusing and at times, digress into secular, rather than religious concerns. Nevertheless, a plaintiff's "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).

494 U.S. at 888.  Requiring governments to show more than a rational basis for a law of neutral and general applicability would:

> open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind—ranging from compulsory military service, to the payment of taxes; to health and safety regulation such as manslaughter and child neglect laws, compulsory vaccination laws, drug laws, and traffic laws; to social welfare legislation such as minimum wage laws, child labor laws, animal cruelty laws, environmental protection laws, and laws providing for equality of opportunity for the races.

*Id.* at 888–89 (citations omitted).

A law, of course, is not neutral and of general applicability if it discriminates on its face. *Hartmann v. Stone*, 68 F.3d 973, 976, 978 (6th Cir. 1995).  Relatedly, "[a] law might be motivated by animus toward people of faith in general or one faith in particular." *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (per curiam).  Even if a law appears neutral and is devoid of animus, it is not neutral and of general applicability if it is "riddled with exemptions." *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012).

We considered the intersection between religious schools and COVID-19 orders in *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020).  In *Beshear*, the plaintiffs argued that a Kentucky order that temporarily prohibited in-person instruction at public and private K–12 schools violated their free-exercise rights.  We concluded, in a published opinion, that the plaintiffs were unlikely to succeed on their claims that the order violated the Free Exercise Clause of the First Amendment, and thus stayed the district court's preliminary injunction.  *Id.* at 511.  First, we determined that the order was "neutral and of general applicability" because it "applies to all public and private elementary and secondary schools in the Commonwealth, religious or otherwise."  *Id.* at 509.  Accordingly, the order "need not be justified by a compelling governmental interest."  *Id.*  Thus, deferring to "the Governor's determination regarding the health and safety of the Commonwealth at this point in time," we concluded that the plaintiffs were unlikely to succeed on the merits of their free-exercise challenge.  *Id.* at 510.  The Supreme Court denied the plaintiffs' petition for a writ of certiorari without reaching the merits of the case because of the "timing and the impending expiration of the Order."  *Danville Christian Acad., Inc. v. Beshear*, 141 S. Ct. 527, 528 (2020).

In the present case, the district court applied *Beshear* and correctly concluded that because the requirement to wear a facial covering applied to students in grades K–5 at both religious and non-religious schools, it was neutral and of general applicability.  We agree with the district court's application of *Beshear*.

Plaintiffs argue that a subsequent case, *Monclova Christian Academy v. Toledo-Lucas County Health Department*, 984 F.3d 477 (6th Cir. 2020) (order), conflicts with the district court's order here.  In *Monclova Christian Academy*, the panel concluded that a county health-department order requiring all schools in the county to close for in-person learning was subject to strict scrutiny.  Although the order temporarily prohibiting in-person education applied to public and religious K–12 schools alike, the panel construed the relevant comparator as secular businesses such as "gyms, tanning salons, office buildings, and the Hollywood Casino" that the health order had permitted to remain open, not non-religious K–12 schools.  *Id.* at 482.  Accordingly, the panel held that health order was not neutral and of general applicability and applied strict scrutiny to the challenged order.  Applying this standard, the panel concluded that the health-department order was not narrowly tailored to serve a compelling state interest and granted plaintiffs' motion for a preliminary injunction.  Following the framework of *Monclova Christian Academy*, Plaintiffs argue that the district court erred by failing to compare MDHHS's interest in requiring that students in grades K–5 wear masks in the classroom with MDHHS's interest in allowing persons not to wear masks in certain, secular circumstances.  Pls.' Br. at 30.

*Beshear* and *Monclova Christian Academy*, however, seemingly conflict with one another.  Indeed, the panel in *Monclova Christian Academy* recognized that *Beshear* could pose an issue but contended that the decision in *Beshear* did not consider the "broader question" of "whether an order closing public and parochial schools violates the Clause if it leaves *other* comparable secular actors less restricted than the closed parochial schools."  *Id.* at 481.  Thus, according to the panel in *Monclova Christian Academy*, it was free to consider in the first instance whether the relevant comparators were secular actors regulated by the specific order or a broader set of secular businesses.  *Id.*  As Plaintiffs and amici here suggest, *Monclova Christian Academy*'s interpretation of *Beshear* is incorrect.  Amici Br. at 9.  In *Beshear*, we did consider whether the appropriate comparator was other non-religious schools or other non-school entities

No. 20-2256                *Resurrection Sch. et al. v. Hertel et al.*                Page 24

and held that the former was the appropriate comparator.  The plaintiffs and amici in *Beshear* argued at the district court and in their appellate briefs that the law was not neutral and of general applicability because it prohibited in-person education at K–12 religious schools while permitting secular activities to continue.  *See, e.g.*, Pls.-Appellees' Resp. Mot. for Stay Pending Appeal, at 3–5, *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020); Brief for Pleasant View Baptist Church et al. as Amici Curiae Supporting Respondents, at 5–10, *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020); Brief for Multiple Private Kentucky Religious Schools as Amici Curiae Supporting Respondents, at 9–12, *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020).  Accordingly, as this issue was "brought to the attention of the court" and "ruled upon" in the earlier case, we must follow *Beshear* rather than *Monclova Christian Academy*. *United States v. Lucido*, 612 F.3d 871, 876 (6th Cir. 2010) (quoting *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006)); *see also United States v. Jarvis*, 999 F.3d 442, 445–46 (6th Cir. 2021) ("Forced to choose between conflicting precedents, we must follow the first one.").

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021), does not compel a different comparator.  In *Tandon*, the Supreme Court concluded that the plaintiffs were likely to succeed on the merits of their free-exercise challenge to a California order limiting all gatherings in homes, religious and non-religious, to three households.  *Id.* at 1297.  "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise."  *Id.* at 1296.  In concluding that the restriction was not neutral and of general applicability, the Court noted that "California treats some *comparable* secular activities more favorably than at-home religious exercise, permitting hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time."  *Id.* (emphasis added).  Identifying a comparable secular activity for religious schools other than a public or private nonreligious school is difficult.  Schools educating students in grades K–5 are unique in bringing together students not yet old enough to

be vaccinated against COVID-19 in an indoor setting and every day.[13]  Accordingly, the proper comparable secular activity in this case remains public and private nonreligious schools.

Even under this broader conception of comparable secular activity, the MDHHS orders are not so riddled with secular exceptions as to fail to be neutral and generally applicable.  The exceptions to the MDHHS Orders were narrow and discrete.  First, many of the exceptions, such as medical intolerance to mask use, eating and drinking, swimming, or receiving a medical treatment during which a mask cannot be worn, are "inherently incompatible with" wearing a mask.  Hertel & Nessel Br. at 30.  Contact sports where participants cannot safely remain masked must adhere to a testing protocol.  03/02/2021 MDHHS Order § 6(a)(2).  Here, Plaintiffs seek to exempt children in grades K–5 at religious schools from having to wear a mask during an activity in which wearing a mask is possible, albeit undesirable for Plaintiffs.  Second, almost all exceptions to the MDHHS Orders—aside from children younger than five years old and those medically unable to wear a mask—are short in duration and lower risk (medical and personal care services requiring removal of a mask; voting).  Hertel & Nessel Br. at 30–31.  Some of the exceptions have a stringent social distancing requirement (public speaking with twelve feet of distance) or are outdoors where the risk of COVID-19 transmission is reduced (outdoor, physically distanced exercise).  *Id.* at 33.  Third, The MDHHS Orders also exempt activities that are necessary to fulfill "equally important obligations to its citizens' health and safety" (firefighters, police officers, and emergency medical personnel "actively engaged in a public safety role . . . where wearing a face mask would *seriously interfere* in the performance of their public safety responsibilities," 03/02/21 MDHHS Order § 8(i) (emphasis added)).  Hertel & Nessel Br. at 33–34.  By contrast, as Defendants aptly describe it, "plaintiffs' activity comprises all-day, indoor mixing of the same groups of people, five days a week for months on end."  *Id.* at 33.  Thus, unlike in *Monclova Christian School*, where the challenged order exempted an array of secular activities that the panel viewed as posing a greater risk than in-person instruction, the exceptions to the MDHHS Orders are narrow and largely limited to activities of lesser risk than in-person instruction.

---

[13]Perhaps the only other comparable secular activity, childcare organizations, were subject to the same requirement that children ages five years and older wear a mask.  03/02/21 MDHHS Order § 7(e).

Finally, all exceptions to the MDHHS Orders were available to Plaintiffs if they had chosen to engage in that activity. Hertel & Nessel Br. at 27. Plaintiffs were able to remove their face coverings to eat lunch at school, swim during physical education class, participate in Mass at school, engage in distanced public speaking on a religious topic, or exercise outdoors while physically distanced during recess. *Id.* Under the MDHHS orders, persons medically unable to wear a face covering, such as Smith's son, could go without a face covering at school. Because the MDHHS Orders are not so riddled with exceptions for comparable secular activities as to render the mask requirement not neutral and of general applicability, we review the MDHHS Orders for whether the state has a rational basis.

Other cases cited by Plaintiffs do not change this standard. At oral argument, Plaintiffs argued that the Supreme Court's recent decision in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), pronounced a different standard. In *Fulton*, the Supreme Court concluded that the city's refusal to contract with Catholic Social Services for the provision of foster care because the agency's religious beliefs prevented it from certifying same-sex couples violated the organization's free-exercise rights. *Id.* at 1882. The *Fulton* majority's narrow holding focused on a contract provision that permitted the commissioner of the city's Department of Human Services to grant exemptions to the non-discrimination clause in her "sole discretion." *Id.* at 1878. The contract's grant of unfettered discretion meant that the non-discrimination clause was not neutral and of general applicability, and thus, was subject to strict scrutiny. *Id.* at 1881. Although the plaintiffs and some of the concurring justices asked that the Court reconsider *Smith*, the majority declined to do so because the city's policy was not neutral and of general applicability, and thus, fell outside the scope of *Smith*. *Id.* at 1876–77.

Plaintiffs cite the Supreme Court's recent decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2055 (2020), for the principle that "[t]he First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine,'" (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)). Pls.' Br. at 26. Plaintiffs' reliance on *Our Lady of Guadalupe School* is misplaced. In *Our Lady of Guadalupe School*, the Supreme Court concluded that a form of immunity from employment-

discrimination claims brought by certain employees, the ministerial exception, extended to two teachers who taught religion and participated in religious activities. *Id.* at 2066. The Supreme Court, however, emphasized that religious institutions' ability to decide "matters of church government" and "faith and doctrine," "does not mean that religious institutions enjoy a general immunity from secular laws." *Id.* at 2060. MDHHS Orders requiring all persons ages five and older to wear a mask in public—including in the classroom—is not comparable to infringing on the school's authority to select their ministers and religious educators. Thus, *Our Lady of Guadalupe School* provides no help to Plaintiffs.

Plaintiffs' citation to *Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707 (1981), is also misplaced. According to Plaintiffs, *Thomas* compels us to "defer[] [to] Plaintiffs' understanding of their own religious beliefs" and not conclude that "any burden to Plaintiffs' religious beliefs was 'incidental.'" Pls.' Br. at 22 (quoting *Resurrection Sch. v. Gordon*, 507 F. Supp. 3d 897, 902 (W.D. Mich. 2020)). *Thomas*, however, stands for the proposition that we should defer to a plaintiff's characterization of her opposition to a law as religious. *Thomas*, 450 U.S. at 714.

Plaintiffs also argue that we should apply strict scrutiny to MDHHS's Orders because the orders violate both their free-exercise rights and their rights as parents to direct the education of their children. Pls.' Br. at 32.[14] This hybrid-rights theory stems from dicta in *Smith* explaining that a plaintiff may establish a violation of the Free Exercise Clause by showing that a neutral and generally applicable law violates "the Free Exercise Clause in conjunction with other constitutional protections." 494 U.S. at 881.

Although some circuits have recognized hybrid-rights claims, we have consistently declined to recognize hybrid-rights claims. For instance, in *Kissinger v. Board of Trustees of Ohio State University, College of Veterinary Medicine*, 5 F.3d 177 (6th Cir. 1993), we

---

[14]In support of this hybrid-rights argument, Plaintiffs cite language from the Supreme Court's order in *Danville Christian Academy* declining to grant Plaintiffs' application for a writ of certiorari. Pls.' Br. at 32 ("Even if this Court were to deem Defendants' orders generally applicable, which they are not, Plaintiffs' free exercise claim also requires heightened scrutiny because the 'application of a neutral, generally applicable law to religiously motivated action implicates the right of parents to direct the education of their children.'" (quoting *Danville Christian Acad.*, 141 S. Ct. at 528)). Plaintiffs' reference is misleading, because the Supreme Court was merely repeating an argument raised by amici, not assessing the merits of this argument.

considered the merits of a veterinary student's claim that her college's policy of requiring students to dissect animals violated the Free Exercise Clause and other constitutional provisions. We declined to apply strict scrutiny to her hybrid claim, reasoning that "[w]e do not see how a state regulation would violate the Free Exercise Clause if it implicates other constitutional rights but would not violate the [F]ree Exercise Clause if it did not implicate other constitutional rights." *Id.* at 180. Simply put, this outcome would be "completely illogical." *Id.* "[T]herefore, at least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated," we explained that we would "not use a stricter legal standard than that used in *Smith* to evaluate generally applicable, exceptionless state regulations under the Free Exercise Clause." *Id.* Since then, we have consistently declined to recognize a hybrid-rights theory. *See Pleasant View Baptist Church*, 838 F. App'x at 940–41 (Donald, J., concurring) (collecting cases). We decline to recognize a hybrid-rights claim here.

Applying rational-basis review, we hold that the MDHHS Orders are rationally related to a legitimate government interest. To satisfy rational-basis review, Defendants must show "only that the regulation bear[s] some rational relation to a legitimate state interest." *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002). Here, Defendants had a legitimate state interest in controlling the spread of COVID-19 in Michigan. Plaintiffs apparently concede this point, acknowledging that "COVID-19 poses real challenges and concerns to everyone and requires a robust response." Pls.' Br. at 4. Further, Defendants cite more than ample evidence that requiring masks in the school setting minimizes the spread of COVID-19. *See* Hertel & Nessel Br. at 4–5; Vail & Siemon Br. at 8; R. 16-2 (Aff. of Vail) (Page ID #535–62). Although Plaintiffs question the effectiveness of masks, even they admit that "masks serve a purpose when students cannot socially distance and do not object to (and, indeed, enforce) mask wearing in the hallways and common areas of the school." Pls.' Br. at 5–6.

We conclude that the MDHHS Orders do not violate the Free Exercise Clause because the MDHHS Orders are neutral and of general applicability and satisfy rational-basis review.

## D.  Equal-Protection Claim

Plaintiffs argue that the MDHHS Orders violate the Equal Protection Clause because the Orders exempt certain secular activities but not religious education, and, alternatively, because the Orders lack a rational basis.  Plaintiffs also fault the district court for failing to cite caselaw explaining why the MDHHS Orders satisfy the Equal Protection Clause.

To establish an equal-protection violation, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Township of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)).  We have explained that "[t]he threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Plaintiffs' equal-protection challenge is confusing, is largely a repackaging of its free-exercise argument, and is ultimately meritless.  First, Plaintiffs fail to satisfy this threshold requirement of showing that the state has treated similarly situated persons differently than Plaintiffs.  Plaintiffs argue that the MDHHS Orders result in "disparate treatment" because they permit persons to remove their masks while engaging in certain secular activities and in religious worship in a house of worship, while requiring students in grades K–5 at religious schools to wear masks.  This is a free-exercise challenge, not an equal-protection challenge.  Seemingly recognizing that this is a free-exercise challenge, Plaintiffs open their argument by stating that "the challenged measures burden Plaintiffs' fundamental rights to the free exercise of religion under the First Amendment in violation of the equal protection guarantee of the Fourteenth Amendment."  Pls.' Br. at 34.  Further, there is no "disparate treatment" because the MDHHS Orders did not distinguish between certain groups of children.  The MDHHS Orders required all children ages five and older to wear masks in public, subject to a few universal exceptions that were available to Plaintiffs.

Plaintiffs' argument that the requirement that children ages five years and older wear masks in the classroom lacks any rational basis is equally unavailing. Although unclear from the brief, Plaintiffs appear to argue that the MDHHS Orders lack any rational basis because the Orders exempted activities that Plaintiffs perceive as riskier than the in-person education of students in grades K–5. Pls.' Br. at 34. One could also include Plaintiffs' general belief that masks do not work to limit the transmission of COVID-19 within this argument. *Id.* at 5. As discussed in Part II.C, however, the MDHHS Orders satisfy rational-basis review. Accordingly, we conclude that Plaintiffs' equal-protection claim fails.

**E.  Substantive-Due-Process Claim**

Finally, Plaintiffs argue that the MDHHS Orders violate their substantive-due-process rights. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (declining to consider the plaintiff's substantive-due-process challenge because it was really a commercial-speech case).

Plaintiffs' challenge to the MDHHS Orders lies in the First Amendment's Free Exercise Clause, and thus, their substantive-due-process claim is duplicative. The district court admittedly did not explicitly address the merits of Plaintiffs substantive-due-process claim. We nonetheless conclude that Plaintiffs' substantive-due-process claim is without merit.

### III.  CONCLUSION

For the foregoing reasons, we hold that Plaintiffs' challenge to the mask requirement for children in grades K–5 in all schools in Michigan is not moot. We **AFFIRM** the district court's denial of Plaintiffs' motion for a preliminary injunction.

---

### CONCURRING IN PART AND DISSENTING IN PART

---

SILER, Circuit Judge, concurring in part and dissenting in part.  I concur with the majority's conclusions on mootness, in part A of the opinion.  However, I dissent on the merits on the primary issue, that is, whether the district court correctly denied the petition for the granting of a preliminary injunction.

I do not quarrel with the fact that the district court had the authority to deny the motion for preliminary injunction under the facts of this case, but it did not have the benefit of the more recent case *Tandon v. Newsom*, 141 S. Ct. 1294 (2021).  It also did not have the benefit of the decision in *Monclova Christian Academy v. Toledo-Lucas County Health Department*, 984 F.3d 477 (6th Cir. 2020), which was handed down later in the same month that the district court made its ruling.  *Monclova* held that in cases such as this, the court should look at all comparators, not just the public schools.  *Id.* at 480.  The district court here compared the restrictions in this matter with those followed in *Commonwealth v. Beshear*, 981 F.3d 505 (6th Cir. 2020).  Yet *Monclova* is more consistent with *Tandon* than *Beshear*.  The court did not consider other comparable secular activities beyond the public schools.  I feel it is a mistake for this court to uphold the denial of the preliminary injunction on the interpretation from *Tandon* without giving the district court an opportunity to consider it in light of all the evidence before it.  Therefore, I would remand to the district court to review the case in light of the decision in *Tandon*.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-2256

RESURRECTION SCHOOL; CHRISTOPHER MIANECKI, individually and as next friend on behalf of his minor children C.M., Z.M., and N.M.; STEPHANIE SMITH, individually and as next friend on behalf of her minor child F.S.,

      Plaintiffs - Appellants,

      v.

ELIZABETH HERTEL, in her official capacity as the Director of the Michigan Department of Health and Human Services; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan; LINDA VAIL, in her official capacity as the Health Officer of Ingham County; CAROL A. SIEMON, in her official capacity as the Ingham County Prosecuting Attorney,

      Defendants - Appellees.

```
┌─────────────────────────────┐
│           FILED             │
│         Aug 23, 2021        │
│    DEBORAH S. HUNT, Clerk   │
└─────────────────────────────┘
```

Before:  SILER, MOORE, and DONALD, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Plaintiffs' motion for a preliminary injunction is AFFIRMED on the merits.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk